FILED

MAR 12 2024

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| ADAN ORTIZ, an individual and on behalf of all others similarly situated, | No.  23-55147 |
| Plaintiff-Appellee, | D.C. No. 5:22-cv-01399-TJH-SHK |
| v. | MEMORANDUM[*] |
| RANDSTAD INHOUSE SERVICES, LLC, a Delaware limited liability company; RANDSTAD NORTH AMERICA, INC., a Delaware corporation, | |
| Defendants-Appellants, | |
| and | |
| XPO LOGISTICS, INC., a Delaware corporation; et al., | |
| Defendants. | |

| | |
|---|---|
| ADAN ORTIZ, an individual and on behalf of all others similarly situated, | No.  23-55149 |
| Plaintiff-Appellee, | D.C. No. 5:22-cv-01399-TJH-SHK |
| v. | |

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

XPO LOGISTICS, INC., a Delaware corporation; et al.,

Defendants-Appellants,

and

RANDSTAD INHOUSE SERVICES, LLC, a Delaware limited liability company; et al.,

Defendants.

Appeal from the United States District Court
for the Central District of California
Terry J. Hatter, Jr., District Judge, Presiding

Argued and Submitted December 4, 2023
Pasadena, California

Before: BEA, M. SMITH, and VANDYKE, Circuit Judges.
Partial Concurrence and Partial Dissent by Judge BEA.

When Adan Ortiz was hired by Randstad Inhouse Services to perform temporary work for GXO Logistics Supply Chain, he agreed to arbitrate any future claims against his employers pertaining to the terms and conditions of his employment.[1] After his temporary employment concluded, Ortiz filed suit against his former employers, bringing claims covered by the agreement. The employers

---

[1] Like the concurrently filed opinion, this memorandum disposition refers to the Randstad entities as "Randstad," the GXO entities as "GXO," and the defendant employers collectively as "the employers."

filed a motion to compel arbitration of Ortiz's claims pursuant to the parties' agreement, which the district court denied.

In this consolidated interlocutory appeal, the parties dispute (1) whether their arbitration agreement is enforceable under the Federal Arbitration Act ("FAA") and (2) if not, whether it is alternatively enforceable under any state's substantive law of arbitrability. In a concurrently filed opinion, we affirm the district court's order insofar as it concluded the FAA does not apply. This memorandum disposition considers whether the parties' agreement contemplates enforcement under state law if the FAA does not apply. Concluding that it does, we reverse the district court's decision to the contrary, hold that California law applies, and remand the parties' remaining issues for consideration in the first instance by the district court.

Before turning to the proper interpretation of the arbitration agreement, we must first address Ortiz's contention that we lack jurisdiction over the state law portions of this case. Advancing a narrow view of our jurisdiction, Ortiz asserts that under 9 U.S.C. § 16(a)(1)(B), which provides that "[a]n appeal may be taken from … an order … denying a petition under section 4 of [the FAA] to order arbitration to proceed," this court has interlocutory jurisdiction to review only the applicability of the FAA, not the state law portions of the district court's order.

While at least one circuit has endorsed Ortiz's view, *see Hamrick v. Partsfleet, LLC*, 1 F.4th 1337, 1352–54 (11th Cir. 2021), this court has yet to address it.

3

Because an alternative basis for exercising jurisdiction exists, we need not do so here. This court has held that "an order denying a motion to compel arbitration is immediately appealable as tantamount to a denial of injunctive relief under 28 U.S.C. § 1292(a)(1)." *Jackson v. Amazon.com, Inc.*, 65 F.4th 1093, 1097 (9th Cir. 2023). Consistent with *Jackson*, we treat the district court's order "as tantamount to a denial of injunctive relief" and exercise jurisdiction under 28 U.S.C. § 1292(a)(1).

With our jurisdiction established, we now turn to the substance of the arbitration agreement. Its choice-of-law provision reads as follows:

> This Agreement shall be governed by the Federal Arbitration Act ("FAA"). Any federal, state or local laws preempted by the FAA shall not apply to this Agreement or its interpretation. I agree that this Agreement may be enforced and administered by a court of competent jurisdiction through the filing of a petition to: compel arbitration; confirm, vacate or modify an arbitration award; or otherwise pursuant to the FAA.

The district court, reasoning that "there are two semantically reasonable interpretations of the second sentence," concluded that the clause was ambiguous and construed that ambiguity against Randstad, the drafter.

"The interpretation and meaning of contract provisions are questions of law that we review de novo." *Rittmann v. Amazon.com, Inc.*, 971 F.3d 904, 909 (9th Cir. 2020). The parties assume that California's law of contract interpretation applies. Under California law, a "contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting." Cal. Civ.

4

Code § 1636. "California courts interpret contracts containing arbitration provisions by application of the plain meaning rule—words of a contract are given their usual and ordinary meaning." *Johnson v. Walmart, Inc.*, 57 F.4th 677, 682 (9th Cir. 2023). They will not "strain to create an ambiguity where none exists." *Int'l Bhd. of Teamsters v. NASA Servs., Inc.*, 957 F.3d 1038, 1044 (9th Cir. 2020) (quoting *Waller v. Truck Ins. Exch., Inc.*, 900 P.2d 619, 627 (Cal. 1995)).

Applying these principles, we conclude that the choice-of-law provision unambiguously contemplates application of both the FAA and state law to the extent it is not preempted by the FAA. Both the first sentence, which provides "[the] [a]greement shall be governed by the Federal Arbitration Act," and the third, which contemplates enforcement "pursuant to the FAA," clearly express the parties' intent to apply the FAA. But here, as we conclude in the concurrently filed opinion, applying the FAA provides no basis to enforce the arbitration agreement because Ortiz qualifies as an exempt transportation worker.

"It does not follow, however, that the arbitration clause is unenforceable" simply because it is "outside the scope of the FAA." *Chappel v. Lab'y Corp. of Am.*, 232 F.3d 719, 725 (9th Cir. 2000). Instead, "[w]hile the distinctive procedural apparatus and presumption of arbitrability of the FAA would fall away" under these circumstances, Ortiz might "still be required under the law of contract to arbitrate in accordance with the clause." *Id.*; *see also Cole v. Burns Int'l Sec. Servs.*, 105 F.3d

5

1465, 1472 (D.C. Cir. 1997) ("Although the applicability of the FAA may be significant in the sense that the statute prescribes certain procedural rules that might not otherwise obtain, we have little doubt that, even if an arbitration agreement is outside the FAA, the agreement still may be enforced.").

Here, as *Chappel* anticipates, the parties' agreement also clearly expresses their intent to alternatively enforce the arbitration agreement under state law. The second sentence of the choice-of-law clause provides that "[a]ny … state … laws preempted by the FAA shall not apply to this Agreement." From this provision, it stands to reason that the parties expected state laws not preempted by the FAA— including state laws that guarantee the enforceability of arbitration agreements—to apply to the agreement. This reading of the contract is consistent with both the FAA itself, which nowhere indicates that it provides the sole remedy for parties who agree to arbitrate pursuant to its terms, and with *Chappell*.

The questions, then, are (1) which state's law applies and (2) whether that state's substantive law of arbitrability is within the class of state laws that are not preempted by the FAA.

The threshold question is which state's law should apply. Though the parties' agreement contemplates the application of *some* state's law, it does not dictate which state. Where "no effective choice of law has been made," California courts fall back on traditional choice-of-law principles espoused in the Restatement (Second) of

Conflicts to decide which law has the most significant relationship to the parties and the transaction. *E.g.*, *Stonewall Surplus Lines Ins. Co. v. Johnson Controls, Inc.*, 14 Cal. App. 4th 637, 646 (Cal. Ct. App. 1993). Here, the factors relevant to the most-significant relationship analysis favor California law. Restatement (Second) of Conflicts § 188(2)(a)–(e) (1971).

Having decided that the state law contemplated by the contract is California's, we must next determine whether California's substantive law of arbitrability is within the class of state laws that are not preempted by the FAA and therefore incorporated by the choice-of-law clause. We conclude that it is. "In most important respects, the California statutory scheme on enforcement of private arbitration agreements is similar to the FAA," and California "Code of Civil Procedure section 1281, like section 2 of the FAA, provides that predispute arbitration agreements are valid, enforceable, and irrevocable, save upon such grounds as exist for the revocation of any contract." *Lagatree v. Luce, Forward, Hamilton & Scripps LLP*, 88 Cal. Rptr. 2d 664, 676 (Cal. Ct. App. 1999) (cleaned up; internal quotations omitted). *Compare* Cal. Code Civ. Proc. § 1281, *with* 9 U.S.C. § 2. Because the parties contemplated the application of state law not preempted by the FAA, and because California's substantive guaranty in favor of arbitrability is not, in fact,

7

preempted by the FAA, we conclude that the parties unambiguously agreed to apply California law when, as here, the FAA provides no basis to enforce the agreement.[2]

In concluding otherwise, the dissent overreads both the language of the Agreement's choice-of-law provision and the relevant provisions of the FAA. First, the dissent concludes the Agreement establishes an *exclusive* preference in favor of the FAA by using the phrase "[t]his Agreement *shall* be governed by the [FAA]" (emphasis added). The dissent is of course correct that the word "shall" imposes a mandatory duty on the parties to apply the FAA to their agreement to arbitrate. But the dissent errs by conflating that mandatory obligation with an exclusive choice of law favoring the FAA.

The dissent applies the *expressio unius* canon to conclude that the parties' use of the phrase "shall be governed by the [FAA]" implies the exclusion of all other potentially applicable law. But as this court has recognized, "[t]he force of any negative implication … depends on context." *Castillo v. Metro. Life Ins. Co.*, 970 F.3d 1224, 1232 (9th Cir. 2020) (quoting *NLRB v. SW Gen., Inc.*, 580 U.S. 288, 302 (2017)). Therefore, "the *expressio unius* canon applies only when 'circumstances support a sensible inference that the term left out must have been meant to be excluded.'" *Castillo*, 970 F.3d at 1232 (quoting *Chevron U.S.A., Inc. v. Echazabal*,

---

[2] Because the choice-of-law provision is not ambiguous as to whether state law may apply, we do not address the district court's decision to construe any ambiguity against the employers.

8

536 U.S. 73, 81 (2002) (cleaned up)). Here, the context makes clear that the parties could not possibly have intended the FAA to apply to the exclusion of all other law because the very next sentence of the Agreement's choice-of-law clause states that only "state … laws *preempted by the FAA* shall not apply to this Agreement" (emphasis added). Taken together in context, the plain meaning of these two sentences precludes the dissent's exclusive reading of the use of the word "shall."

To get around that problem, the dissent adopts an overly restrictive view of the relevant provisions of the FAA. In the dissent's view, the phrase "[a]ny … state … laws preempted by the FAA shall not apply to this Agreement" excludes a state's substantive guarantees in favor of arbitrability because "the FAA expressly provides the governing standard: Ortiz is exempt from arbitration under 9 U.S.C. § 1."

But that is not what § 1 of the FAA says. Section 1 is a limitation on the scope of the FAA's reach. In relevant part, it provides that "nothing herein contained shall apply to … any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1. Among the provisions that do not apply to such contracts is the substantive guarantee in favor of arbitrability in § 2 of the FAA, which reads "[a] written provision in any maritime transaction … to settle by arbitration a controversy thereafter arising out of such contract … shall be valid, irrevocable, and enforceable." *Id.* § 2.

As the accompanying opinion concludes, we unanimously agree that Ortiz is categorically excluded from § 2's guarantee favoring arbitrability on account of § 1. But as this court decided in *Chappel*, "[i]t does not follow" that Ortiz is necessarily exempt from arbitration altogether. *Chappel*, 232 F.3d at 725. An exemption from a federal substantive guarantee of arbitrability is not the same thing as a definitive statement that such contracts are categorically unenforceable in all circumstances. Thus, after applying the FAA as the parties intended, the arbitrability of the dispute is left indeterminate. The dissent has therefore provided no reason why state substantive law favoring arbitration of the Agreement would be among the class of state laws that is inconsistent with—and therefore preempted by—the FAA. And by the clear import of the choice-of-law provision's second sentence, such laws apply to the Agreement.

The dissent's related charge that enforcing the CAA "means that a directly applicable FAA provision—§ 1—does *not* govern the agreement" is wrong for the same reasons. No one disputes that § 1 continues to govern the Agreement. That is, of course, why Ortiz cannot be compelled to arbitrate *pursuant to the FAA's terms*. But here, where the FAA neither compels *nor forecloses* arbitration, the second sentence of the choice-of-law clause clearly expresses the parties' intent for non-preempted state law to continue to apply to the Agreement. The CAA is one such source of non-preempted law.

10

Having decided that California law applies and is not preempted by the FAA, all that remains is to determine whether the parties' arbitration agreement is enforceable under California law. Because the district court concluded that the parties did not agree to apply state law, it did not consider Ortiz's substantive challenges to enforceability, and the parties spent comparatively little time on such issues in their briefing and argument before this court. "Where an argument has been briefed only cursorily before this court and was not ruled on by the district court," the prudent course is to remand for the district court to first consider the issue. *Shirk v. United States ex rel. Dep't of Interior*, 773 F.3d 999, 1007 (9th Cir. 2014) (cleaned up). We therefore remand all of Ortiz's remaining issues to be addressed by the district court in the first instance.

For these reasons, the district court's order denying appellants' motion to compel arbitration is **REVERSED IN PART**, insofar as it concluded that state law does not apply in the alternative, and all remaining issues are **REMANDED** to the district court. The parties shall bear their own costs associated with this appeal.

*Adan Ortiz v. Randstad Inhouse Services, LLC*, and *XPO Logistics, Inc.*, Nos. 23-55147, 23-55149

BEA, Circuit Judge, concurring in part and dissenting in part:

I join the concurrently filed opinion, which holds that Ortiz is an exempt transportation worker under § 1 of the Federal Arbitration Act ("FAA"), in full. *See* 9 U.S.C. § 1; *Sw. Airlines Co. v. Saxon*, 596 U.S. 450 (2022). I also agree that we have jurisdiction over the state law portions of this appeal under 28 U.S.C. § 1292(a)(1). *See Jackson v. Amazon.com, Inc.*, 65 F.4th 1093, 1097 (9th Cir. 2023).

But in my view, the arbitration agreement unambiguously limits its enforcement to and by the FAA and, therefore, precludes enforcement under the California Arbitration Act ("CAA"). Because Ortiz is exempt from the FAA, there is no law under which the arbitration agreement can be enforced. *See Rittmann v. Amazon.com, Inc.*, 971 F.3d 904, 920 (9th Cir. 2020) (explaining that state law cannot be used to enforce an arbitration agreement where the "express contractual language . . . precludes its application"). I would thus affirm the district court's order which denied the defendants' motion to compel arbitration. I respectfully dissent.

1. "California courts interpret contracts containing arbitration provisions by application of the plain meaning rule—words of a contract are given their usual and ordinary meaning." *Johnson v. Walmart, Inc.*, 57 F.4th 677, 682 (9th Cir. 2023). "An essential element of any contract is the consent of the parties or mutual assent," and the scope of the parties' assent "is to be ascertained solely from the contract that

1

is reduced to writing, if possible." *Martinez v. BaronHR, Inc.*, 51 Cal. App. 5th 962, 967 (Cal. Ct. App. 2020).

Here, the first sentence of the written arbitration agreement provides: "This Agreement shall be governed by the Federal Arbitration Act ("FAA")."[1] The only acceptable meaning of the word shall "under strict standards of drafting" is: "has a duty to," or "is required to." *Shall*, Black's Law Dictionary (11th ed. 2019); see *Hewitt v. Helms*, 459 U.S. 460, 471–72 (1983) (explaining that the word shall is "of an unmistakable mandatory character"). Indeed, the most fundamental semantic rule of interpretation is that "[w]ords are to be understood in their ordinary everyday meanings—unless the context indicates that they bear a technical sense." Antonin Scalia & Bryan A. Garner, *Reading Law: Interpretation of Legal Texts*, 69. And under the *expressio unius* canon, the reference to the FAA as the governing law "implies the exclusion of other[]" laws, including the CAA. *Id.* at 107.

In my view, then, the ordinary meaning of the words "shall be governed by the [FAA]" unambiguously mandates application of the FAA, and no other law, to determine the enforceability of the arbitration agreement. *See Nedlloyd Lines B.V. v. Superior Ct.*, 834 P.2d 1148, 1153–55 (Cal. 1992) ("When a rational businessperson enters into an agreement establishing a transaction or relationship and provides that

---

[1]     The third sentence of the arbitration clause, moreover, reiterates that the agreement "may be enforced and administered . . . pursuant to the FAA."

disputes arising from the agreement shall be governed by the law of an identified jurisdiction, the logical conclusion is that he or she intended that law to apply to all disputes arising out of the transaction or relationship."). Put in other terms, when Ortiz signed the arbitration agreement, he did not assent to enforcement of the arbitration under any law other than the FAA. *See Martinez*, 51 Cal. App. 5th at 967.

Hence, the law under which the agreement "shall be governed" is the FAA, *including* its § 1 exemption. And applying the FAA here, the defendants cannot compel arbitration, because Ortiz is exempt under § 1. There is nothing in the contract that can be construed to say that the CAA can be used, in the *alternative*, to compel arbitration whenever the FAA does not provide for arbitration.

In concluding to the contrary, the majority relies on *Chappel v. Laboratory Corporation of America*, in which we held that an arbitration agreement can be enforced under the law of the contract, even if a plaintiff is exempt under the FAA. 232 F.3d 719, 725 (9th Cir. 2000). I do not take issue with that principle in a case, unlike this one, in which the contract does not specify that the FAA "shall" govern the dispute. But the arbitration clause signed by the parties in *Chappel* stated merely that the plaintiff could "appeal the matter to an impartial arbitrator." *Id.* at 722. It did not specify which law should govern the enforceability of the arbitration clause. *Id.* In contrast, the arbitration clause here singles out the FAA as the only law available to enforce arbitration. Thus, unlike in *Chappel*, where the "law of the contract"

3

involved a general agreement to arbitrate, the "law of the contract" here is to arbitrate *under the terms of the FAA*. *See id.* at 725. And as we all agree, Ortiz is exempt from arbitration under the FAA. *See* 9 U.S.C. § 1. The majority's holding that Ortiz is, nonetheless, *not* exempt from arbitration under a conflicting state law renders the § 1 exemption inoperative whenever a state enacts its own arbitration law. It should go without saying that a state cannot nullify Congress's commands in this way.

2. The majority next relies on the second sentence of the arbitration agreement, which provides: "Any . . . state . . . laws preempted by the FAA shall not apply to this Agreement or its interpretation." The majority reasons that this sentence demonstrates that the parties expected some state laws—namely, those state laws that are not preempted by the FAA, such as the CAA—would apply. It thus concludes that the contract allows state law to *supersede* the FAA with respect to issues, such as enforceability, over which the FAA directly governs. I cannot agree.

For one, the Supreme Court has held that the FAA incorporates certain aspects of state law, because the FAA itself provides that an arbitration clause is enforceable "save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Construing that language, the Court has reasoned that, when an arbitration clause *is otherwise enforceable under the FAA*, the FAA incorporates, and thus does not preempt, "generally applicable contract defenses" that derive solely from state law, such as fraud, duress, or unconscionability. *Kindred Nursing*

4

*Centers Ltd. v. Clark*, 581 U.S. 246, 251 (2017); *see Perry v. Thomas*, 482 U.S. 483, 492 n.9 (1987) ("[S]tate law, whether of legislative or judicial origin, is applicable if that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally."). Moreover, ordinary state-law principles govern with respect to interpreting arbitration clauses that are enforceable under the FAA. *See, e.g.*, *Cape Flattery*, 647 F.3d at 920. Hence, the parties expected that such state laws *could* be used alongside the FAA *when* the FAA is applied to enforce the agreement. But the necessary predicate for the use of state law—that the FAA can be used to enforce the agreement—is absent here. And nothing in the second sentence demonstrates that the parties expected state law could supersede a *directly applicable* FAA provision such as § 1.

Meanwhile, the FAA does preempt any state-law contract principle that "discriminat[es] on its face against arbitration." *Clark*, 581 U.S. at 251. For example, when enforcement under the FAA *is* available, a state could not render all arbitration agreements unconscionable. *See, e.g.*, *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 343 (2011). It is *those* state laws, which would have invalidated the arbitration clause even if it were enforceable under the FAA, that the second sentence of the arbitration agreement clarifies may not apply. Contrary to the majority's reasoning, the second sentence does not thereby say that once the FAA does not compel enforcement, *other* state laws, such as the CAA—which would never have applied

5

if the agreement were enforceable under the FAA—may suddenly trump the unambiguous choice-of-FAA provision in the first sentence. Indeed, once the FAA exempts arbitration, there is nothing for the FAA to preempt and, therefore, no state law that *could* implicate the second sentence. Surely, a state could discriminate against arbitration if the FAA itself does not require arbitration. Hence, once a plaintiff is exempt under the FAA, the second sentence loses all meaning, because in that case, *no* state laws would ever be "preempted by the FAA." The majority's assertion that the CAA can apply because it is not "inconsistent" with the FAA's general preference in favor of arbitration is therefore irrelevant when, as here, the FAA does *not* express a preference in favor of arbitration.

In turn, the second sentence is most naturally read to reiterate the mandate of the first sentence: when the FAA articulates a rule—relating to enforceability or arbitration procedures—the FAA, not state law, "shall" govern. At the same time, state laws that apply *alongside* the FAA—for which the FAA does not articulate a standard—are available to apply and interpret the contract, as in all FAA cases, so long as those laws do not discriminate against arbitration. *See Clark*, 581 U.S. at 251. Here, however, the FAA expressly provides the governing standard: Ortiz is exempt from arbitration under 9 U.S.C. § 1. The majority's conclusion that the CAA can be used to compel arbitration means that a directly applicable FAA provision—§ 1—does *not* govern the agreement, despite the contract's express directive that the

6

FAA "shall" govern the agreement. The majority is incorrect to "rewrite the contract" in this manner. *See Rittman*, 971 F.3d at 921.

In sum, the plain meaning of the arbitration clause contemplates that the FAA, and only the FAA, can be used to enforce the arbitration agreement. And because Ortiz is exempt from the FAA, there is no law under which the arbitration clause can be enforced. Hence, I would affirm the district court's order which denied the defendants' motion to compel arbitration. I respectfully dissent.