**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| KEVIN JOHNSON, individually and on behalf of all others similarly situated,<br>*Plaintiff-Appellee,*<br><br>v.<br><br>WALMART INC.,<br>*Defendant-Appellant.* | No. 21-16423<br><br>D.C. No.<br>1:20-cv-01360-DAD-JLT<br><br>OPINION |

Appeal from the United States District Court
for the Eastern District of California
Dale A. Drozd, District Judge, Presiding

Argued and Submitted November 18, 2022
San Francisco, California

Filed January 10, 2023

Before: A. Wallace Tashima and Richard A. Paez, Circuit Judges, and William K. Sessions III,[*] District Judge.

Opinion by Judge Sessions

---

[*] The Honorable William K. Sessions III, United States District Judge for the District of Vermont, sitting by designation.

## SUMMARY[**]

### Arbitration

The panel affirmed the district court's denial of Walmart Inc.'s motion to compel arbitration of the claims asserted against it by Kevin Johnson, who brought a putative class action alleging breach of contract and breach of the duty of good faith and fair dealing arising out of a lifetime tire balancing and rotation service agreement that Johnson purchased from a Walmart Auto Care Center.

Johnson purchased a set of tires from Walmart.com, which included a Terms of Use with an arbitration provision. Johnson had the tires shipped to and installed at a Walmart Auto Center, and while waiting for the tires to be installed, he purchased the lifetime balancing and rotation Service Agreement. Johnson received tire services once in 2019 but was later denied service on several occasions in 2020 at multiple Walmart Auto Centers. Johnson commenced this action in September 2020. Walmart sought to compel individual arbitration of its dispute with Johnson pursuant to the arbitration provisions of the Terms of Use. The district court found that the plain meaning of the Terms of Use precluded applicability of the arbitration provision to in-store purchases.

The panel agreed with the district court that Johnson contested the existence, not the scope, of an arbitration agreement that would encompass this dispute. As the party seeking to compel arbitration, Walmart bore the burden of

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

proving the existence of an agreement to arbitrate by a preponderance of the evidence. Walmart agreed that Johnson did not consent to an arbitration agreement at the time he purchased the Service Agreement at the Walmart Auto Care Center, but argued that Johnson's in-store purchase was subject to the same pre-existing arbitration agreement that he accepted when he purchased tires from Walmart.com and agreed to the Terms of Use. The panel held that Johnson's claim against Walmart did not arise out of the contract containing the arbitration agreement, but rather arose out of an entirely separate transaction at a Walmart store.

Because the panel concluded that the existence of an arbitration agreement was at issue and thus the presumption in favor of arbitrability did not apply, the panel used general California state-law principles of contract interpretation to decide whether a contractual obligation to arbitrate existed. The panel held that the Terms of Use had a clear, delineated purpose—to regulate use of Walmart's online resources and content. No provision of the Terms of Use addressed any form of in-store engagement with Walmart. Because the Terms of Use covered a defined subset of consumer interaction with Walmart—access to and use of Walmart Sites—the nested arbitration provision of the Terms of Use could not apply to the controversy over the in-store purchase of the Service Agreement.

Walmart argued that Johnson's two purchases were "merely interrelated contracts in an ongoing series of transactions" such that the arbitration agreement of the first necessarily applied to the second. The panel held that substantial evidence supported that the two contracts between Johnson and Walmart were separate, independent agreements. The two contracts—though they involved the

same parties and the same tires—were separate and not interrelated. Therefore, the arbitration agreement in the first did not encompass disputes arising from the second.

---

## COUNSEL

Aileen M. McGrath (argued), Michael J. Stortz, and Michael J. Weisbuch, Akin Gump Strauss Hauer & Feld LLP, San Francisco, California; Pratik A. Shah, Akin Gump Strauss Hauer & Feld LLP, Washington, D.C.; for Defendant-Appellant.

Kenneth H. Yoon (argued) and Stephanie E. Yasuda, Yoon Law APC, Los Angeles, California, for Plaintiff-Appellee.

Brian J. Malloy, The Brandi Law Firm, San Francisco, California, for Amicus Curiae Consumer Attorneys of California.

# OPINION

SESSIONS, District Judge:

Walmart, Inc. ("Walmart") appeals the district court's denial of its motion to compel arbitration of the claims asserted against it by Kevin Johnson ("Johnson"). Johnson brought this putative class action for breach of contract and breach of the duty of good faith and fair dealing arising out of a lifetime tire balancing and rotation service agreement that Johnson purchased from a Walmart Auto Care Center. The district court denied Walmart's motion and we affirm.

## I.

In July 2018, Johnson purchased a set of tires from Walmart.com, Walmart's online platform. By making an online purchase, Johnson agreed to the Walmart.com Terms of Use ("Terms of Use"). The Terms of Use to which Johnson assented state: "Welcome to the family of websites and applications provided by Walmart. These Terms of Use govern your access to and use of all Walmart Sites." Section 20 of the Terms of Use contains a mandatory arbitration provision requiring that ". . . all disputes arising out of or related to these Terms of Use or any aspect of the relationship between you and Walmart . . . will be resolved through final and binding arbitration."

Johnson had the tires shipped to and installed at a Walmart Auto Care Center in Texas. While waiting for his tires to be installed, Johnson purchased a lifetime tire balancing and rotation service agreement ("Service Agreement") from a Walmart employee at a separate, additional cost. Johnson received these tire services once in 2019 but was later denied service on several occasions in

2020 at multiple Walmart Auto Care Centers across Texas, Arizona, and California. After Walmart declined to service Johnson's tires, Johnson commenced this putative class action in September 2020.

In December 2020, Walmart moved to compel individual arbitration of the dispute pursuant to the arbitration provision of the Terms of Use. The district court denied Walmart's motion. It found that the plain meaning of the Terms of Use precluded applicability of the arbitration provision to in-store purchases. Walmart appealed challenging the district court's ruling. We have jurisdiction pursuant to 9 U.S.C. § 16(a)(1)(C). This court reviews de novo a district court's denial of a motion to compel arbitration. *Blair v. Rent-A-Center, Inc.*, 928 F.3d 819, 824 (9th Cir. 2019).

On appeal, Walmart maintains that because Johnson agreed to the arbitration provision of the Terms of Use when he purchased a set of tires from Walmart.com, those Terms encompass this lawsuit, which concerns his in-store purchase of a tire servicing agreement. By Walmart's logic, the Terms of Use trigger the existence of an independent, broad arbitration agreement between Walmart and users of Walmart Sites that applies to any interaction between Walmart and the customer, regardless of whether the dispute arises out of an online purchase or any provision of the Terms of Use. Walmart points to the language of the arbitration provision, which reaches disputes that "arise out of or relate to" the Terms of Use or any aspect of the customer's relationship with Walmart, and argues that the introductory provisions, which state that the Terms of Use govern "access to and use of all Walmart Sites," are independent.

II.

Written agreements to settle commercial disputes by arbitration are subject to the Federal Arbitration Act ("FAA"). 9 U.S.C. § 2. Congress enacted the FAA to address "longstanding judicial hostility to arbitration agreements" and place them "upon the same footing as other contracts." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991). The FAA requires:

> A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. It "mandates . . . arbitration on issues to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985).

The FAA limits the role of the judiciary "to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). If the court answers both questions in the affirmative, it must "enforce the arbitration agreement in accordance with its terms." *Revitch v. DIRECTTV, LLC*, 977 F.3d 713, 716 (9th Cir. 2020) (quoting *Chiron Corp.*, 207 F.3d at 1130). And "while doubts concerning the scope of an arbitration clause should be resolved in favor of arbitration, the presumption does not apply to disputes concerning whether an agreement to

arbitrate has been made." *Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733, 743 (9th Cir. 2004) (internal quotation omitted); *see also Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1044–45 (9th Cir. 2009) ("The presumption in favor of arbitration . . . does not apply if contractual language is plain that arbitration of a particular controversy is not within the scope of the arbitration provision." (internal quotation marks and citation omitted)).

The "first principle" of a court's arbitration decision is that "[a]rbitration is strictly a matter of consent . . . and thus is a way to resolve those disputes—*but only those disputes*—that the parties have agreed to submit to arbitration." *Granite Rock Co. v. Int'l Bhd of Teamsters*, 561 U.S. 287, 299 (2010) (emphasis in original) (citations and quotation marks omitted). As "arbitration is a matter of contract[,] . . . a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986) (internal quotation marks and citations omitted). Though the FAA "reflects an emphatic federal policy in favor of arbitral dispute resolution," *Marmet Health Care Ctr., Inc. v. Brown*, 565 U.S. 530, 533 (2012) (citations omitted), that requires courts to "rigorously enforce agreements to arbitrate," *Byrd*, 470 U.S. at 221, it "does not require parties to arbitrate when they have not agreed to do so," *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989).

We agree with the district court that Johnson contests the existence, not the scope, of an arbitration agreement that would encompass this dispute. As the party seeking to compel arbitration, Walmart bears the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence. *See Knutson v. Sirius XM Radio Inc.*, 771 F.3d

559, 565 (9th Cir. 2014). Walmart agrees that Johnson did not consent to an arbitration agreement at the time he purchased the Service Agreement at the Walmart Auto Care Center. Nonetheless, Walmart argues that Johnson's in-store purchase is subject to the same pre-existing arbitration agreement that he accepted when he purchased tires from Walmart.com and agreed to the Terms of Use. Section 2 of the FAA requires arbitration of controversies that arise out of a contract containing a valid, enforceable arbitration provision. *See* 9 U.S.C. § 2. But Johnson's claim against Walmart does not arise out of the contract containing the arbitration agreement; it arises out of an entirely separate transaction at a Walmart store. Thus, only if the Service Agreement itself is subject to the Terms of Use does an agreement to arbitrate claims arise out of that in-store purchase.

## III.

Because we conclude that the existence of an arbitration agreement is at issue and thus the presumption in favor of arbitrability does not apply, "we use general state-law principles of contract interpretation to decide whether a contractual obligation to arbitrate exists."[1] *Goldman, Sachs & Co.*, 747 F.3d at 743; *see also Suski v. Coinbase, Inc.*, No. 22-15209, slip op at 8 (9th Cir. Dec. 16, 2022). In California, "[a] contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting." Cal. Civ. Code. § 1636. "To determine the

---

[1] While the purchase of the tire servicing agreement took place in Texas, the parties have agreed that California law governs the contract dispute as Johnson is a California resident, he was denied the tire services at a Walmart Auto Care Center in California, and the Terms of Use stipulate that they will be construed under California law.

reach of a particular agreement, we must look to its express terms." *Walsh v. Arizona Logistics, Inc.*, 998 F.3d 393, 396 (9th Cir. 2021). California courts interpret contracts containing arbitration provisions by application of the plain meaning rule—words of a contract are given their usual and ordinary meaning. *Valencia v. Smyth*, 185 Cal. App. 4th 153, 176 (2010). And under California law, a contract must be "interpreted as a whole." *Int'l Bhd. of Teamsters v. NASA Servs., Inc.*, 957 F.3d 1038, 1042 (9th Cir. 2020) (reversing the district court's order compelling arbitration where the court failed to interpret an arbitration clause in the context of the contract as a whole). We must, therefore, interpret the meaning of individual arbitration clauses "in connection with the rest of the agreement" and "not detached portions thereof." *Id.* at 1042 (internal quotation omitted).

The Terms of Use have a clear, delineated purpose—to regulate use of Walmart's online resources and content. The introductory text of the Terms of Use provides: "These Terms of Use govern your access to and use of all Walmart Sites." The agreement's provisions, therefore, apply only to a consumer's use of and access to Walmart Sites. The Terms of Use define "Walmart Sites" to mean:

> www.walmart.com, and the Walmart mobile site https://mobile.walmart.com, the Walmart Apps, and all related functionality, services, and Content offered by or for Walmart on or through www.walmart.com and the Walmart Apps or the systems, servers, and networks used to make the Walmart Sites available.

A Walmart Auto Care Center is not a "Walmart Site" under this definition. Moreover, the Terms of Use cover subject matter such as online user accounts, the content of Walmart

Sites and their use, monitoring of user activity on Walmart Sites, the placing of online transactions, and the shipping and delivery of online orders. No provision of the Terms of Use addresses any form of in-store engagement with Walmart.

Walmart asks the court to treat a customer's use of a Walmart Site as an acceptance of a separate arbitration agreement that touches more than the Terms of Use themselves. But viewing the contract as a whole, the introductory clause bounds the subject matter to which the agreement applies: "access to and use of all Walmart Sites." By the plain meaning of the introductory language, no provision of the Terms of Use can govern Johnson's in-store purchase because that purchase did not involve his access to or use of any Walmart Site. The language and subject matter of the contract make clear that by agreeing to the Terms of Use, Johnson did not assent to arbitrate claims that might arise out of a separate, in-store purchase. As the Terms of Use cover a defined subset of consumer interaction with Walmart—access to and use of Walmart Sites—the nested arbitration provision of the Terms of Use cannot apply to the controversy over the in-store purchase of the Service Agreement.

Walmart argues that Johnson's two purchases are "merely interrelated contracts in an ongoing series of transactions" such that the arbitration agreement of the first necessarily applies to the second. Where two contracts are "separate," "the lack of an arbitration clause means disputes over the agreement are not subject to arbitration." *Int'l Ambassador Programs, Inc. v. Archexpo*, 68 F.3d 337, 340 (9th Cir. 1995). But where two contracts "are merely interrelated contracts in an ongoing series of transactions," an arbitration provision in one contract could apply to subsequent contracts. *Id.*

Substantial evidence supports that the two contracts between Johnson and Walmart are separate, independent agreements. The arbitration agreement consented to when Johnson purchased a set of tires from Walmart.com "does not control the separate agreement of the parties." *Id.* First, although the receipt Johnson received documenting his purchase of the Service Agreement notes the tires as "PREPAID" online, Johnson's purchase of the Service Agreement was "negotiated and entered into separately" from his initial purchase of tires from Walmart.com. *Humetrix, Inc. v. Gemplus, S.C.A.*, 129 F.3d 125, \*2 (9th Cir. 1997) (unpublished table decision). Second, the two contracts involved separate consideration, as the first contract was for the purchase of goods while the second was for the performance of services. *See id.* (two contracts that "differ[ed] substantially" in their terms and services were not interrelated). And third, while Walmart points out that Johnson references the original cost of the tires to calculate damages, the proof Johnson requires to establish his underlying claim for breach of contract involves neither a breach of his initial tire-purchase agreement nor an interpretation of the Walmart.com Terms of Use, but rather depends exclusively on the terms of the Service Agreement. *See Archexpo*, 63 F.3d at 340. Johnson would rely on the original value of his tires before he was denied the rotation and balancing services regardless of whether he purchased the tires from Walmart or another retailer.

The two contracts—though they involve the same parties and the same tires—are separate and not interrelated. Therefore, the arbitration agreement in the first does not encompass disputes arising from the second.

**AFFIRMED.**