Filed 12/31/25  Beta Madison v. MGP Murrieta CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| BETA MADISON, INC. et al., | D086344 |
| Plaintiffs and Respondents, | |
| v. | (Super. Ct. No. CVSW2404517) |
| MGP MURRIETA, LP et al., | |
| Defendants and Appellants. | |

APPEAL from an order of the Superior Court of Riverside County, Raquel Marquez, Judge.  Affirmed.

Schwartz Semerdjian Cauley Schena & Bush, John Schena, Joshua Gilbert, and Sofia N. Carrasco for Defendants and Appellants.

Artiano & Associates, James Artiano and Lawrence S. Andrews; Stone & Sallus and Jason M. Stone for Plaintiffs and Respondents.

## I.  INTRODUCTION

Plaintiff John Cherrington and defendant Randy Weisser once jointly owned a series of interrelated business entities.  In 2021, Cherrington and Weisser entered a dissolution agreement that divided the joint holdings in a

way that each business would be separately owned either by Cherrington or Weisser.  The dissolution agreement contains an arbitration provision.

Years later, Cherrington (and one of the entities allocated to him under the dissolution agreement) sued Weisser and several other defendants for alleged misconduct in connection with the management of a limited partnership.  Cherrington and Weisser did not *directly* hold a joint ownership interest in that limited partnership; however, one of the entities that Cherrington and Weisser once jointly owned held a minority interest in the limited partnership.  Based on that connection, Weisser and several defendants moved to compel arbitration of the claims in this lawsuit under the arbitration provision in the Cherrington/Weisser dissolution agreement. The trial court denied the motion to compel, finding that the plaintiffs' claims arose under the limited partnership agreement (which does not contain an arbitration provision) and did not fall within the scope of the dissolution agreement's arbitration provision.  We agree and affirm.

## II.  BACKGROUND

### A.  The Dissolution Agreement

Cherrington and Weisser jointly owned several business ventures that primarily involved real estate holdings in Riverside County.  After their business relationship deteriorated, Cherrington and Weisser decided to terminate their joint involvement in three entities:  Beta Madison, Inc. (BMI); Beta Winchester, LLC (Beta Winchester); and CK 17, LP (CK-17).  In April 2021, to document their new understanding, Cherrington and Weisser concluded a "Joint Investment Dissolution and Division Agreement" (the

2

Dissolution Agreement) effective as of a few months earlier (January 1, 2021).[1]

The Dissolution Agreement's "Recitals" state: (1) "the Parties hold interests in several entities together"; (2) "the Parties are interested in dissolving their mutual holdings so they may each own their respective investments separately"; and (3) "the Parties have entered into this Agreement to provide a 'blueprint' for such unwinding, distribution and dissolution of their various holdings."

The "joint holdings" section of the Dissolution Agreement identifies the three jointly held entities mentioned above (BMI, Beta Winchester, and CK-17) and lists each of those entities' respective holdings. BMI's holdings are most relevant to this appeal.

As to BMI, the Dissolution Agreement states:

> Cherrington and Weisser are the sole shareholders in [it], and it:
>
> -owns a small retail center . . . [in] Murietta . . . ; and
>
> -is a 40% limited partner, along with others, in MGP Murrieta, L.P. [(MGP LP)] of which MGP Murrieta Management Corporation, Inc. [(MGP Inc.)] is the General Partner. Weisser is a shareholder, director and officer of [MGP Inc.]. [BMI]'s shares are pledged as security for a loan made to [MGP LP].[2]

---

[1] The parties to the Dissolution Agreement are, on one hand, John, Linda, and Leslie Cherrington, "in various capacities" and defined collectively as "Cherrington"; and, on the other hand, Randy and Karen Weisser, "in various capacities" and defined collectively as "Weisser." The agreement refers to Cherrington and Weisser collectively as "the Parties."

[2] Neither MGP LP nor MGP Inc. are parties to the Dissolution Agreement.

3

The Dissolution Agreement identifies Beta Winchester's ownership as a series of entities controlled by Cherrington and Weisser. Beta Winchester's holdings were "several buildings consisting of 'Office Condos.' " As to CK-17, the Dissolution Agreement states that Cherrington, Weisser, and others are its limited partners, and its holdings include land in Murrieta.

The "dissolution/distribution plan" in the Dissolution Agreement explains how the parties would divide their joint holdings. As to BMI, (1) Weisser assigned all his shares in BMI to Cherrington, leaving Cherrington as the sole shareholder; and (2) BMI distributed a portion of its 40-percent limited partnership interest in MGP LP so that Weisser received a 12-percent interest and BMI retained a 28-percent interest. We discuss the significance of MGP LP further below in connection with the complaint's allegations.

The assets of Beta Winchester and CK-17 were distributed among the parties in a way that left Weisser as the sole owner of those entities.

The Dissolution Agreement includes a "general release" under which Cherrington and Weisser "release[d] . . . all claims, known and unknown, foreseen and unforeseen, that one may have against the other . . . arising out of or in any manner related to the Dispute or otherwise, from the beginning of time through the date of th[e] Agreement." The Dissolution Agreement does not define the term "Dispute."

The Dissolution Agreement also includes an arbitration provision, which states:

> Any dispute, claim or controversy arising out of or relating to this Agreement or the breach, termination, enforcement, interpretation or validity thereof, including the determination of the scope or applicability of this agreement to arbitrate, shall be determined by arbitration before one arbitrator. The

4

arbitration shall be administered by Judicate West pursuant to its rules and procedures. Judgment on the Award may be entered in any court having jurisdiction. This clause shall not preclude parties from seeking provisional remedies in aid of arbitration from a court of appropriate jurisdiction. The party prevailing in such action or proceeding shall be entitled to recover from the other party, or to be reimbursed, the prevailing party's actual attorneys' fees and costs including, but not limited to, expert witness fees, witness fees, and any and all other fees and costs.

## B. The Complaint

The underlying complaint was filed in April 2024.

### 1. The Parties

The plaintiffs in the underlying lawsuit are Cherrington and BMI (which Cherrington wholly owned at the time of the lawsuit by virtue of the Dissolution Agreement). We refer to Cherrington and BMI collectively as Plaintiffs.

The relevant defendants in the underlying lawsuit are Weisser, MGP LP, and MGP Inc. (collectively, Appellants).[3]

The complaint explains the relationship between the parties as they relate to MGP LP. MGP LP is a limited partnership established in 2005. Its general partner was MGP Inc. MGP LP's limited partners were BMI, which (before the Dissolution Agreement) held a 40 percent partnership interest; Michael Crews Development II, Inc. (Crews), which held a 40 percent

---

[3] The only other named defendant is Stacy Baxter, as trustee of the Grimes Family Irrevocable Trust (the Grimes Trust). As alleged in the complaint, Fred Grimes was — until his death — a manager in one of the businesses at issue in the lawsuit. Neither Baxter nor Fred Grimes are parties to this appeal.

partnership interest; the Grimes Trust, which held a 10 percent partnership interest; another trust for certain members of the Grimes family, which held a 10 percent partnership interest; and a company (not involved in this litigation) that held no partnership interest but held an interest in profits and losses. Until 2016, MGP Inc. was managed by Weisser and Fred Grimes; after that, it was controlled solely by Weisser.

### 2. The Allegations

The claims asserted in the complaint arise from the alleged mismanagement of the MGP LP limited partnership. Plaintiffs allege four categories of wrongdoing by various defendants.

First, Plaintiffs allege that — unknown to the other limited partners — the Grimes Trust used limited partnership funds to acquire Crews's limited partnership interest. This caused MGP LP to lose around $400,000. Further, if the partnership interest acquired with MGP LP's funds had been distributed proportionally among the other limited partners (instead of being distributed in whole to the Grimes Trust), BMI would have held a majority interest in MGP LP. Instead, the Grimes Trust obtained a 60 percent interest in MGP LP.

Second, Plaintiffs allege that MGP Inc., Weisser, and the Grimes Trust engaged in self-dealing by entering an undisclosed side deal for the sale of limited partnership property to a third party.

Third, Plaintiffs allege that MGP Inc. caused MGP LP to enter a contract to sell all of the limited partnership's real estate holdings "for approximately half its reasonable value."

Finally, Plaintiffs allege that Weisser and Fred Grimes engaged in self-dealing by loaning money to MGP LP at above-market rates without disclosing these facts to the other limited partners.

6

Based on these allegations, Plaintiffs assert causes of action against all defendants for breach of the MGP LP limited partnership agreement (the Limited Partnership Agreement, a copy of which is attached to the complaint), breach of fiduciary duty, and judicial dissolution of partnership; and against MGP Inc. for an accounting. The complaint prays for damages, costs and attorney fees, an order dissolving MGP LP, and a final accounting.

## C. The Motion to Compel Arbitration

### 1. Appellants' Motion

Invoking the Dissolution Agreement's arbitration provision, Appellants moved to compel arbitration of the claims asserted in the complaint. Appellants argued the claims fell within the scope of the Dissolution Agreement because (1) the agreement contained a broad release by which Cherrington "relinquished all claims he held against . . . Weisser"; and (2) the Dissolution Agreement "identified new ownership percentages in [MGP LP] and [BMI]" and the complaint "question[s] BMI's percentage of ownership in [MGP LP]."

Appellants argued that MGP LP and MGP Inc., though not parties to the Dissolution Agreement, could nevertheless compel Cherrington and BMI (also not a party to the Dissolution Agreement) into arbitration: (1) "based on principles of equitable estoppel"; (2) because the Dissolution Agreement "itself is inextricably intertwined with the causes of action Plaintiffs are advancing due to the general release of claims"; and (3) because the Dissolution Agreement "was made for the benefit of BMI, or at least BMI benefited from the [Dissolution] Agreement, insofar as it resolved financial interests concerning it." Appellants asserted that "the claims against [MGP LP] and [MGP Inc.] cannot be parsed out separately," but rather, would

7

"evaporate[]," because they all "center around the actions of . . . Weisser," against whom "Cherrington released his claims."

### 2. Plaintiffs' Opposition

Plaintiffs opposed the motion to compel arbitration. They argued that the Dissolution Agreement "has absolutely nothing to do with the claims being brought against Defendants" because the Dissolution Agreement "is neither relied upon for Plaintiffs' claims, nor even mentioned in . . . the complaint. It is a stand-alone agreement between two parties that has nothing to do with the facts at issue."

For similar reasons, Plaintiffs argued nonsignatories MGP LP and MGP Inc. had not met their burden to establish equitable estoppel because the claims asserted in the lawsuit were not inextricably intertwined with the Dissolution Agreement. Plaintiffs further argued BMI was not an intended third party beneficiary of the Dissolution Agreement because the agreement was "very clear on the reason for its existence" — "to dissolve the parties' mutual holdings in their respective investments." Plaintiffs reasoned that the Dissolution Agreement's allocation of ownership of BMI "has nothing to do with the operative complaint, except that BMI, owned wholly by Cherrington, is a plaintiff in the action."

### 3. The Trial Court's Ruling

The trial court issued a tentative ruling denying Appellants' motion to compel arbitration, finding the Dissolution Agreement's "arbitration provision does not cover the claims in this case." Considering the agreement's recitals, the court reasoned that the purpose of the Dissolution Agreement was to dissolve the parties' joint holdings. By contrast, the complaint did "not allege any breach of the [Dissolution] Agreement," but

8

rather, alleged breaches of the Limited Partnership Agreement and related duties. The court acknowledged the Dissolution Agreement's broad release of claims but concluded it did "not otherwise change the nature of the claims made by Plaintiff, which only arise out of the limited partnership and the [Limited Partnership] Agreement." The tentative ruling did not address whether the nonsignatory defendants were entitled to invoke the arbitration provision or whether nonsignatory-plaintiff BMI was subject to it.

After the motion hearing, which was not reported, the trial court denied the motion to compel arbitration.

### III. DISCUSSION

Appellants contend the trial court erred by denying their motion to compel arbitration because Plaintiffs' claims fall within the scope of the Dissolution Agreement's arbitration provision and because the nonsignatory defendants were entitled to enforce the Dissolution Agreement (including against nonsignatory-plaintiff BMI). We conclude Plaintiffs' claims — which arise under the Limited Partnership Agreement — do not fall within the scope of the arbitration provision, which is contained in the Dissolution Agreement. Accordingly, we do not reach Appellants' arguments regarding nonsignatories.

#### A. Relevant Legal Principles

A "threshold question[] presented by every motion or petition to compel arbitration" is "whether the parties' dispute falls within the scope of that agreement." (*Ahern v. Asset Management Consultants, Inc.* (2022) 74 Cal.App.5th 675, 687 (*Ahern*).) "While '[b]oth the federal government and California have strong public policies " 'in favor of arbitration as an expeditious and cost-effective way of resolving disputes,' " ' there ' " ' "is no

9

policy compelling persons to accept arbitration of controversies which they have not agreed to arbitrate." ' " ' " (*Mondragon v. Sunrun Inc.* (2024) 101 Cal.App.5th 592, 602 (*Mondragon*); accord, *Ford Motor Warranty Cases* (2025) 17 Cal.5th 1122, 1129 [" 'Arbitration is "a way to resolve those disputes — but only those disputes — that the parties have agreed to submit to arbitration." ' "].)  " 'Indeed, a trial court has no power to order parties to arbitrate a dispute that they did not agree to arbitrate.' " (*Mondragon*, at p. 602.)

" 'When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles that govern the formation of contracts.' " (*Sandquist v. Lebo Automotive, Inc.* (2016) 1 Cal.5th 233, 244.)  " 'In determining the scope of an arbitration [agreement], "[t]he court should attempt to give effect to the parties' intentions, in light of the usual and ordinary meaning of the contractual language and the circumstances under which the agreement was made." ' " (*Mondragon, supra*, 101 Cal.App.5th at p. 602, quoting *Victoria v. Superior Court* (1985) 40 Cal.3d 734, 744.)

"As a general rule, arbitration should be upheld ' " 'unless it can be said with assurance that an arbitration clause is not susceptible to an interpretation covering the asserted dispute.' " ' [Citations.]  'Nonetheless, this policy does not override ordinary principles of contract interpretation. "[T]he contractual terms themselves must be carefully examined before the parties to the contract can be ordered to arbitration . . . ." ' [Citation.] ' "[T]he terms of the specific arbitration clause under consideration must reasonably cover the dispute as to which arbitration is requested." ' " (*Ahern, supra*, 74 Cal.App.5th at p. 688; see *Valentine Capital Asset Management, Inc. v. Agahi* (2009) 174 Cal.App.4th 606, 627 ["the policy under federal and

California law favoring the arbitration of disputes . . . cannot be used to compel arbitration of disputes that are plainly outside the scope of the arbitration agreement"].)

" ' "Whether an arbitration agreement applies to a controversy is a question of law to which the appellate court applies its independent judgment where no conflicting extrinsic evidence in aid of the interpretation was introduced in the trial court." ' " (*Ahern, supra*, 74 Cal.App.5th at p. 687; accord, *Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 236.)

### B. Analysis

Based on our de novo interpretation of the Dissolution Agreement, we conclude that its arbitration provision does not encompass the claims asserted in Plaintiffs' complaint.

The arbitration provision is worded broadly — it governs "[a]ny dispute, claim or controversy arising out of or relating to [the Dissolution Agreement]." (See Knight et al., Cal. Practice Guide: Alternative Dispute Resolution (The Rutter Group 2024) ¶ 5:215.4 ["The most common 'broad form' arbitration agreement covers '. . . all claims or disputes *arising out of or relating to* this agreement or the breach thereof.' "]; *Bono v. David* (2007) 147 Cal.App.4th 1055, 1067 ["A 'broad' clause includes those using language such as '*any claim* arising from or *related to* this agreement.' "].)

Yet, the scope of the Dissolution Agreement itself is narrow. According to its recitals, Cherrington and Weisser "entered into [the Dissolution Agreement] to provide a 'blueprint' for [the] unwinding, distribution and dissolution of their various" jointly held investments, which they were "interested in dissolving . . . so they may each own [them] separately." The key operative provisions of the Dissolution Agreement identify the parties'

11

joint holdings (BMI, Beta Winchester, and CK-17) and divvy them up between the parties. The agreement speaks only to ownership interests in the joint holdings; it says nothing about how they were previously managed or operated, or whether there were any disputes on those topics. In this light, a dispute "arising out of or relating to" the Dissolution Agreement would be a dispute between Cherrington and Weisser about their division of BMI, Beta Winchester, or CK-17.

By contrast, we find Plaintiffs' claims in their complaint arise solely from the defendants' conduct in connection with MGP LP.[4] Specifically, Plaintiffs based their claims on (1) the Grimes Trust's undisclosed use of partnership funds to acquire another limited partner's partnership interest; (2) self-dealing by MGP Inc., Weisser, and the Grimes Trust in entering into undisclosed side-deals for the sale of partnership property; (3) MGP Inc.'s sale of all partnership property for about half of its reasonable value; and (4) self-dealing by Weisser and Fred Grimes in the form of undisclosed loans that included terms detrimental to the partnership. None of these claims arise out of or relate to the distribution of Cherrington and Weisser's joint holdings. Nor does the complaint's prayer seek any relief arising out of or relating to those joint holdings. Indeed, the complaint makes no reference to the Dissolution Agreement or to the distribution of joint assets between Cherrington and Weisser.

Consequently, the claims asserted in the complaint — which relate only to the Limited Partnership Agreement — do not fall within the scope of the arbitration provision contained in the Dissolution Agreement.

---

[4]    Appellants did not meaningfully discuss the substance of the complaint's claims either in the trial court or on appeal.

12

To resist this conclusion, Appellants observe that BMI — formerly a joint holding of Cherrington and Weisser — held a 40 percent interest in MGP LP and that the complaint "now questions BMI's percentage of ownership" in MGP LP. This observation is immaterial. The complaint's reference to BMI's ownership percentage of MGP LP relates only to the Grimes Trust's alleged use of partnership funds to acquire another limited partner's partnership interest, which effectively diluted BMI's ownership percentage. This allegation does not bring the claim within the scope of the Dissolution Agreement's arbitration provision because the allegation does not involve conduct by Cherrington or Weisser or otherwise affect how they agreed in the Dissolution Agreement to distribute BMI between themselves. Nor, as noted, does the complaint pray for any relief regarding the reallocation of MGP LP partnership interests or BMI ownership interests.

Alternatively, Appellants maintain the Dissolution Agreement's broad release brings Plaintiffs' claims within the scope of that agreement. We are unpersuaded. To begin, we note the release applies to claims "arising out of or in any manner related to the Dispute," yet the Dissolution Agreement never defines the term "Dispute." Further, even assuming the Dissolution Agreement's release is broader than its arbitration provision, Appellants do not explain why claims falling within the broader release would be subject to the narrower arbitration provision. As noted, we have already concluded that Plaintiffs' claims do not fall within the scope of the arbitration provision.

Finally, Appellants cite several cases that purportedly "shed[] light on instances where courts have correctly held that an agreement to arbitrate does *not* apply." (See *Gravillis v. Coldwell Banker Residential Brokerage Co.* (2006) 143 Cal.App.4th 761, 780, 782 [addressing whether claims for emotional distress and distress-induced diabetes constitute "bodily injury" for

13

purposes of an exclusion from an arbitration provision in a standard form real estate purchase agreement]; *Fabian v. Renovate America, Inc.* (2019) 42 Cal.App.5th 1062, 1063 [addressing the authenticity of an electronic signature on an arbitration agreement in a residential solar agreement]; *O'Connor v. Road Runner Sports, Inc.* (2022) 84 Cal.App.5th 224, 226, 234 [addressing whether a consumer was bound to an arbitration provision added to the online terms and conditions of a retailer's loyalty program where it was undisputed that the consumer did not have actual or constructive notice of the arbitration provision but his lawyer learned of it only in the course of the litigation].) The varied facts of these consumer litigation cases shed no light on our interpretation, as a matter of law, of the Dissolution Agreement's arbitration provision.

We find *Marsch v. Williams* (1994) 23 Cal.App.4th 250 more instructive. In *Marsch*, this court held that the plaintiff could not be compelled to arbitrate claims against his business partner arising out of a partnership agreement that lacked an arbitration clause even though a separate partnership agreement between the same parties concerning a different venture contained a broad form arbitration clause. (*Id.* at pp. 252, 254–257.) As in *Marsch*, the Dissolution Agreement and the Limited Partnership Agreement "were not closely connected in purpose, did not incorporate one another's terms, were not executed at the same time, and the breach of [one] agreement did not necessarily lead to the breach of the [other] agreement[]." (*Id.* at p. 256; see also *Johnson v. Walmart Inc.* (9th Cir. 2023) 57 F.4th 677, 679–680, 683 [holding, under California law, that the arbitration agreement formed by a consumer's online tire purchase, which purported to govern " 'all disputes arising out of or related to the[] Terms of Use or any aspect of the relationship between [the customer] and Walmart,' "

14

did not apply to the customer's subsequent in-store purchase of a lifetime tire balancing and rotation service agreement because (1) the transactions were negotiated and entered into separately, (2) the two contracts involved separate consideration, and (3) the evidence needed to prove a breach of the service agreement was unrelated to the evidence regarding the tire purchase]; see *id*. at p. 683 ["The two contracts—though they involve the same parties and the same tires—are separate and not interrelated. Therefore, the arbitration agreement in the first does not encompass disputes arising from the second."].)

## IV.  DISPOSITION

The order is affirmed.  Plaintiffs are entitled to their costs on appeal.


RUBIN, J.

WE CONCUR:


McCONNELL, P. J.


KELETY, J.


15