NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

APR 13 2026

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

FOR THE NINTH CIRCUIT

GRETCHEN SHANAHAN, on behalf of herself and her minor children A.S. and B.S.; AMY WARREN, on behalf of herself and her minor child B.W.; KIMBERLY WHITMAN, on behalf of herself and her minor child H.W., individually and on behalf of all others similarly situated,

Plaintiffs - Appellees,

v.

IXL LEARNING, INC.,

Defendant - Appellant.

No. 24-6985

D.C. No.
3:24-cv-02724-RFL

MEMORANDUM[*]

Appeal from the United States District Court
for the Northern District of California
Rita F. Lin, District Judge, Presiding

Argued and Submitted January 5, 2026
San Francisco, California

Before: GOULD, NGUYEN, and BENNETT, Circuit Judges.

Plaintiffs-Appellees, three mothers and their minor children, ER-151–53

brought this putative class action lawsuit against Defendant-Appellant IXL

---

[*]    This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Learning, Inc. ("IXL"), an educational technology company that provides software services that form part of Plaintiffs' children's school curriculum. Plaintiffs allege that IXL collected and monetized their and their children's data without consent. IXL moved to compel arbitration, pointing to an arbitration clause in its terms of service ("Terms"). IXL shared these Terms with Plaintiffs' school districts, but there is no evidence that the Terms were shared with or expressly consented to by Plaintiffs. The district court denied the motion, and IXL timely appealed.

In deciding a motion to compel arbitration, "[t]he FAA limits the role of the judiciary 'to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue.'" *Johnson v. Walmart, Inc.*, 57 F.4th 677, 680 (9th Cir. 2023) (quoting *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000)). "'[W]hile doubts concerning the scope of an arbitration clause should be resolved in favor or arbitration, the presumption does not apply to disputes concerning whether an agreement to arbitrate has been made.'" *Id.* at 680–81 (quoting *Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733, 743 (9th Cir. 2014)). Courts apply "the summary judgment standard of Rule 56" when determining whether an agreement to arbitrate was made. *Hansen v. LMB Mortg. Servs., Inc.*, 1 F.4th 667, 670 (9th Cir. 2021). "[T]he party seeking to compel arbitration . . . bears the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence." *Johnson*,

57 F.4th at 681. "[O]nce a district court concludes that there are genuine disputes of material fact as to whether the parties formed an arbitration agreement, the court must proceed without delay to a trial on arbitrability." *Hansen*, 1 F.4th at 672. "Only when there is no genuine issue of fact concerning the formation of the agreement should the court decide as a matter of law that the parties did or did not enter into such an agreement." *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co., Inc.*, 925 F.2d 1136, 1141 (9th Cir. 1991) (quoting *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51, 54 (3d Cir. 1980), *abrogated in part on other grounds by First Options of Chi. v. Kaplan*, 514 U.S. 938, 944 (1995), *as recognized in Aliments Krispy Kernels, Inc. v. Nichols Farms*, 851 F.3d 283, 288–89 (3d Cir. 2017)). "We review de novo a district court's decision to grant or deny a petition to compel arbitration." *Caremark, LLC v. Chickasaw Nation*, 43 F.4th 1021, 1028 (9th Cir. 2022). "We review for clear error any factual findings underlying the district court's order." *Id.* We have jurisdiction under 9 U.S.C. § 16(a)(1)(B), and we affirm in part, reverse in part, and remand.

1.      IXL argues that the schools were Plaintiffs' agents under California law. Under this theory, IXL contends that the schools were authorized to consent to arbitration on Plaintiffs' behalf. For this contention, IXL relies solely on the following sentence in its Terms:

> If you are a School providing the Service to children under 13, you represent and warrant that you have the authority to provide consent on behalf of

> parents for IXL to collect information from students under 13 before allowing such students to access our Service.

Because the district court found that IXL submitted "sufficient proof to demonstrate the school districts' assent to the Terms," IXL construes this statement in the Terms as an "express representation" by the schools "of authority to act on the parents' behalf—i.e., as the parents' agent."

We disagree. State law governs whether arbitration can be compelled against a nonsignatory to an arbitration agreement. *See Knapke v. PeopleConnect, Inc.*, 38 F.4th 824, 831 (9th Cir. 2022). Under California law, "[t]he burden of proving that a purported agent had the authority to act for the purported principal in a particular circumstance lies with the persons dealing with the agent." *Rogers v. Roseville SH, LLC*, 290 Cal. Rptr. 3d 760, 767 (Cal. Ct. App. 2022). "In particular, a defendant cannot meet its burden to prove the signatory acted as the agent of a plaintiff by relying on representations of the purported agent alone." *Kinder v. Capistrano Beach Care Ctr., LLC*, 308 Cal. Rptr. 3d 631, 636 (Cal. Ct. App. 2023); *see also id.* (holding this rule applies to both actual and "ostensible" agencies); *accord Valentine v. Plum Healthcare Grp., LLC*, 249 Cal. Rptr. 3d 905, 912–13 (Cal. Ct. App. 2019). The representation in the Terms that IXL relies on was made only by the purported agents—it is the *schools*, not the parents, that represented and warranted that they have authority to consent on the parents' behalf. And the schools represented that they had the authority to consent on parents' behalf only as to data collection. Thus,

24-6985

even if binding on the parents, the relevant provision in the Terms does not show that the schools were authorized to bind the parents to arbitrate.

2.    IXL argues that the Children's Online Privacy Protection Act ("COPPA"), 15 U.S.C. § 6502(a)(1) *et seq.*, created a presumptive agency relationship between the schools and the parents, such that the schools could consent to arbitrate on Plaintiffs' behalf.  As IXL sees it, exercising that authority, the schools agreed to the arbitration clause in the Terms on Plaintiffs' behalf.  COPPA makes it "unlawful for an operator of a[n] . . . online service directed to children . . . to collect personal information from a child in a manner that violates the regulations" promulgated by the Federal Trade Commission ("FTC").  15 U.S.C. § 6502(a)(1).  Those regulations must "require the operator . . . to obtain verifiable parental consent for the collection, use, or disclosure of personal information from children."  *Id.* § 6502(b)(1)(A)(ii).  The relevant FTC regulation ("COPPA Rule"), defines "[o]btaining verifiable consent" as "making any reasonable effort" to ensure parents "[r]eceive[] notice of the operator's personal information collection . . . and [a]uthorize[] any collection . . . of the personal information."  16 C.F.R. § 312.2.  The COPPA Rule also requires that "[a]ny method to obtain verifiable parental consent must be reasonably calculated, in light of available technology, to ensure that the person providing consent is the child's parent."  *Id.* § 312.5(b)(1).  The COPPA Rule lists the "[e]xisting methods to obtain verifiable parental consent that

satisfy the requirements of this paragraph," *id.* § 312.5(b)(2), and it sets out an exhaustive set of exceptions to the requirement of prior parental consent, *id.* § 312.5(c).

Nothing in the text of COPPA or of the COPPA Rule even suggests (much less establishes) that operators may treat schools as parents' agents for the purpose of obtaining verifiable parental consent to arbitrate. So IXL turns instead to the FTC's Statement of Basis and Purpose, which accompanied the agency's promulgation of the COPPA Rule. 64 Fed. Reg. 59,888 (Nov. 3, 1999). That Statement explained, in relevant part, that "where an operator is authorized by a school to collect personal information from children, . . . the operator can presume that the school's authorization is based on the school's having obtained the parent's consent." *Id.* at 59,903. Based on that comment, IXL argues that it was entitled to "presume that the school's authorization is based on the school's having obtained the parent's consent." And as IXL sees it, if the schools acted as the parents' agents in providing consent to the collection of personal information, that agency relationship included the authority to bind Plaintiffs to the arbitration clause in IXL's Terms.

IXL's argument is incorrect. The FTC's Statement does not purport to create an agency relationship or an agency presumption. The Statement says that "the operator can presume that the school's authorization is based on the school's having

obtained the parent's consent," not that the schools are parents' agents. *Id.* The Statement mentions agents earlier in the paragraph, but only to note that the COPPA "Rule does not *preclude* schools from acting as intermediaries . . . or from serving as the parents' agent." *Id.* (emphasis added).

And even if the Statement did purport to establish an agency relationship between schools and parents, it would be an unreasonable interpretation not entitled to deference. *See Kisor v. Wilkie*, 588 US. 558, 575–76 (2019). The COPPA Rule requires operators to exert "reasonable effort" to ensure that parents "[r]eceive[] notice of the operator's personal information collection . . . and [a]uthorize[] any collection." 16 C.F.R. § 312.2. It specifies that "[a]ny method to obtain verifiable parental consent must be reasonably calculated . . . to ensure that the person providing consent is the child's parent." *Id.* § 312.5(b)(1). Reasonably interpreted, these provisions of the COPPA Rule do not cohere with the creation or presumption of an agency relationship between schools and parents for purposes of providing consent to arbitration. Indeed, the FTC filed an amicus brief repudiating IXL's interpretation of the FTC guidance.[1]

---

[1] The FTC stated:

> Contrary to IXL's claim, neither COPPA nor the COPPA Rule binds parents to the arbitration terms of IXL's service agreements with school districts. Both COPPA and the COPPA Rule seek to ensure that parents receive adequate notice and provide verifiable consent before the collection, use, and/or disclosure of their children's personal data. Nothing in the text of the statute or the rule creates an agency

24-6985

We agree with the district court's analysis, and we therefore **AFFIRM** the district court's finding that the schools were not Plaintiff's agents.

3.   We hold, however, that the district court misallocated the burden of proof on mutual assent.

IXL argues that because Plaintiffs knew of the Terms at the time they filed suit, their assertion that their children continue to use IXL's services constitutes a ratification of the Terms, including the arbitration clause. Plaintiffs' Complaint refers to the Terms throughout. And the Complaint asserts, in the present tense, that "Plaintiffs use IXL platforms," suggesting that their use continued after Plaintiffs learned of IXL's Terms. These assertions in the Complaint are, as IXL correctly notes, binding on Plaintiffs. *See Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988) ("Factual assertions in pleadings," including "statement[s] in a complaint," "are considered judicial admissions conclusively binding on the party who made them.").

IXL contends that, by allowing their children to continue using IXL software after learning of the Terms, Plaintiffs accepted and became bound by the Terms under Section 1589 of the California Civil Code. Cal. Civ. Code § 1589 ("A

relationship between schools and the parents of school children. Nor does the FTC's response to rulemaking comments support IXL's argument. Nothing in that response suggests that the statute or the rule creates such an agency relationship, let alone one of potentially unlimited scope, as IXL contends.

voluntary acceptance of the benefit of a transaction is equivalent to a consent to all the obligations arising from it, so far as the facts are known, or ought to be known to the person accepting."). The district court rejected this argument, finding that even if IXL had shown a knowing acceptance of the benefit, it had submitted no evidence that the acceptance was *voluntary*.

No California court has addressed which party has the burden to prove voluntariness under Section 1589. Thus, we "must predict how" the California Supreme Court "would decide the issue." *Norcia v. Samsung Telecomms. Am., LLC*, 845 F.3d 1279, 1284 (9th Cir. 2017). Two relevant cases suggest that the California Supreme Court would likely allocate to Plaintiffs the burden to prove that their acceptance of the benefit was not voluntary.[2] In *Saheli v. White Memorial Medical Center*, the parties disputed whether arbitration should be compelled over claims brought under California's Ralph Act and Bane Act. 230 Cal. Rptr. 3d 258, 261 (Cal. Ct. App. 2018). Though the *Saheli* court did not specifically address Section 1589, it held that, generally, the burden is on the party opposing enforcement of an arbitration clause to show a lack of voluntariness, despite the other party's facial burden to prove mutual assent. *Id.* at 269–70. In *Golden Eagle Insurance Co. v. Foremost Insurance Co.*, the court applied Section 1589 without requiring the proponent of the contractual obligations to put forward any evidence that the

---

[2] Neither party has asked us to certify the question to the California Supreme Court.

acceptance of the benefit was voluntary, even when one party's actions suggested an intent not to be bound. *See* 25 Cal. Rptr. 3d 242, 248–49, 251–52 (Cal. Ct. App. 1993). Both *Saheli* and *Golden Eagle* suggest, and we thus conclude, that under California law, Plaintiffs bear the burden to prove that their acceptance of the Terms was involuntary.

At this stage, Plaintiffs have not carried that burden. The district court suggested that Plaintiffs' "continued use of IXL" may not have been voluntary because "[e]nrollment in public school is mandatory in Kansas," where they live, and found that "a parent's decision to not pull their child out of public school or tell them to stop using a platform that is part of the curriculum does not constitute voluntary acceptance of the benefits" of the alleged contract. We disagree. The law often compels parties to transact. *See, e.g.*, Cal. Veh. Code §§ 16020–21 (requiring drivers under almost all circumstances to carry motor vehicle insurance). That legal compulsion does not invalidate mutual assent to the transaction. *See, e.g.*, *Hyde v. Lewis*, 323 N.E.2d 533, 537–38 (Ill. App. Ct. 1975) (rejecting the argument that an insurance mandate creates "legal duress," even where "State authorities regrettably erred in their application of" that mandate). Moreover, Kansas law does not require Plaintiffs to use IXL's products; it requires only that Plaintiffs attend school. *See* Kan. Stat. Ann. § 72-3120 (2022). Because the district court misallocated the burden of proof on voluntariness, Plaintiffs did not produce evidence establishing that they

could not avoid using IXL's products while complying with the Kansas truancy laws.

We therefore **REVERSE** the district court's holding that IXL bore the burden to prove voluntariness, and **REMAND** for the district court to consider whether each Plaintiff validly ratified the Terms. The district court shall permit reasonable discovery[3] on at least these subjects: whether and when each Plaintiff became aware or ought reasonably to have become aware of the existence and content of the Terms; whether the version of the Terms of which each Plaintiff became aware or ought reasonably to have become aware contained an arbitration agreement substantively similar to the one discussed in IXL's motion to compel; whether each Plaintiff child continued using IXL's products, services, or both after learning of the Terms; whether each Plaintiff's continued use amounted to a retroactive ratification of the arbitration clause as to prior use; and whether each Plaintiff's continued use was voluntary.

**AFFIRMED IN PART, REVERSED IN PART, and REMANDED.**

---

[3] On remand, consistent with our disposition, the district court is free to establish reasonable rules and guidelines regarding discovery, and to enforce local rules.